Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4375 | **DATE** | 5/14/2002 |
| **CASE TITLE** | Davy Cady vs. Village of McCook, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendants' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 15 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | IS docketing deputy initials | 19 |
| | Copy to judge/magistrate judge. | | | |
| EF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVY CADY,

    Plaintiff,

vs.

VILLAGE OF McCOOK; JOHN DOE
STRNAD; JOHN DOE TOKARSKI;
RAYMOND TOBOLSKI; EMIL SERGO;
THE McCOOK BOARD OF TRUSTEES;
and VARIOUS UNKNOWN OTHERS,

    Defendants.

No. 01 C 4375

HONORABLE CHARLES R. NORGLE

MAY 1 5 2002

## OPINION AND ORDER

CHARLES R. NORGLE Sr., District Judge:

Before the court is Defendants' motion for summary judgment. For the following reasons, the motion is granted.

### I. BACKGROUND

Proceeding pro se, Davy Cady filed this suit after a brief encounter with police officers in McCook, Illinois. The court's statement of the facts comes from Defendants' Local Rule 56.1 statement and the allegations contained in the complaint.[1] As is required on summary judgment, the court construes the facts in the light most favorable to Cady.

The events that form the basis of Cady's complaint took place on the evening of June 14, 2000, along 47th Street in McCook, Illinois. At approximately 8:00 p.m., McCook Officers Strnad

---

[1] On November 15, 2001, the same day Defendants filed this motion for summary judgment, Defendants complied with Local Rule 56.2 and sent to Cady a notice to pro se litigants opposing summary judgment. Despite the notice, Cady did not comply with Local Rule 56.1.

and Tokarski received a dispatch report that there was a man walking along 47th street, who was all wet, had no shoes or socks, and was talking to himself.

Officers Strnad and Tokarski each responded to the call, and found the barefoot Cady jogging on a grassy area along 47th Street. Both Officers pulled their cruisers onto the grassy area across Cady's path. Cady denies that he was all wet or that he was talking to himself. At the same time, however, Cady concedes that he could have been perspiring to the point of appearing all wet or that he may have doused himself with water to cool himself while he jogged. Cady also concedes that he could have been practicing one of the several languages he claims to speak, or that he could have been singing a hymn to God in English or another language.

Officers Strnad and Tokarski approached Cady, asked what he was doing, and asked for identification. Cady responded that he was jogging and stretching. Cady also said that did not have any identification, and refused to identify himself. Cady generally objected to the officers' inquiry, asserting that jogging barefoot was natural, and the officers did not have probable cause or a reasonable suspicion to detain him. The officers explained that they were investigating calls from citizens about a barefoot man, and that the officers were concerned about Cady's well being. Cady claims that Officer Strnad said Cady could avoid future problems like this if he were to jog on the other side of the street. After approximately twenty minutes, Cady became "emboldened to tell the officers that he would be going on his way without identifying himself. . . ." (Compl. ¶ 35.) Cady then jogged away from the scene without interference from the police.

After this encounter, Cady claims that he was so outraged, emotionally distraught, and frustrated that he stopped jogging altogether. As a result, Cady says that he gained considerable body weight, became depressed, lost self-esteem and his social life, and was negatively affected in his

2

employment endeavors. Cady also alleges that the encounter tread upon his religious beliefs, which encourage bare feet.

## II. DISCUSSION

On June 11, 2001, Cady filed a complaint alleging at least thirteen counts based on both federal and Illinois law. Cady alleged that his federal claims arise under no less than eighteen federal statutes and four provisions of the constitution. Defendants now move for summary judgment, arguing that: (1) the individual officers are entitled to qualified immunity; (2) Cady fails to demonstrate that there is municipal or official capacity liability under Monell v. Department of Social Servs., 436 U.S. 658 (1978); and (3) the state law claims fail because they depend on unfounded violations of federal law. As explained below, the court finds that Cady fails to demonstrate a violation of federal law, and relinquishes jurisdiction over any state claims.

### A. Summary Judgment Standards:

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999); see also Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir. 1999) (stating that a party opposing summary judgment must present "what evidence it has that would convince a trier of fact to accept its version of events"). A defendant is entitled to put the plaintiff to his proofs and demand a showing of the evidence. See e.g. Navarro v. Fuji Heavy Industries, Ltd., 117 F.3d 1027, 1030 (7th Cir. 1997). If the plaintiff fails

to come up with the required proof, the defendant is entitled to summary judgment. See id. It bears repeating that the plaintiff must present evidence, rather than speculation and conclusions without factual support. See Rand v. CF Industries, Inc., 42 F.3d 1139, 1146-47 (7th Cir. 1994).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment. See Fed. R. Civ. P. 56(c), see also, Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also, First Nat'l. Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**B.   Constitutional Claims:**

42 U.S.C. § 1983 is the only federal statute that applies to Cady's case, notwithstanding his recitation of at least seventeen additional sections of the United States Code. "Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere." Spiegel v. Rabinovitz, 121 F.3d 251, 254 (7th Cir.1997). "The standards for a successful Section 1983 action against local police officers or a municipality are well known." Ienco v. City of Chicago, – F.3d –, No. 01-2395, 2002 WL 548891 at *3 (7th Cir. Apr. 12, 2002). The first step, which is dispositive of this case, is for the plaintiff to demonstrate that he or she has been deprived of a federal constitutional right. See id. This also coincides with the first inquiry in

4

a qualified immunity analysis, which is to determine whether the facts alleged by the plaintiff demonstrate that a federal constitutional right has been violated. See Saucier v. Katz, 533 U.S. 194, 200 (2001).

Cady claims that his 20 minute encounter with the police violated his fourth amendment right to be free from an unreasonable seizure of his person. Cady also raises, but does not develop, a first amendment claim concerning the infringement of his religious beliefs, on the ground that his beliefs encourage bare feet. The facts do not support Cady's position.

A fourth amendment seizure occurs when a police officer's actions restrain a person's freedom to walk away from the encounter. See United States v. Mancillas, 183 F.3d 682, 695 (7th Cir. 1999) (quoting Terry v. Ohio, 392 U.S. 1, 16 (1968)). Such seizures come in two categories: brief investigatory stops and full custodial arrests. See Mancillas, 183 F.3d at 695. Here, it is undisputed that Cady was not the subject of a full custodial arrest. Nevertheless, Officers Strnad and Tokarski pulled their squad cars across Cady's path. Immediately after blocking Cady's path, the officers began to question him. Construing these facts in the light most favorable to Cady, he was temporarily not free to walk away from the officers, and was the subject of a Terry stop.

Thus, the question is whether the Terry stop was unreasonable, because the fourth amendment does not prohibit reasonable investigatory detentions. See Mancillas, 183 F.3d at 695. A Terry stop is reasonable if an officer has specific and articulable facts to create a reasonable suspicion that an investigation is warranted. See Mancillas, 183 F.3d at 695; compare United States v. Packer, 15 F.3d 654, 656-59 (7th Cir. 1994) (holding that the facts within police officers' knowledge were insufficient to support a reasonable suspicion that crime was afoot). If there are sufficient facts to support a Terry stop, the length of the stop and the manner in which it is carried

out must also be reasonable, so that the detention lasts no longer than necessary, and the officers use the least intrusive means available to effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 103 S. Ct. 1319, 1325-26 (1983). Although Terry stops often involve situations of suspected criminal activity, there is nothing that limits Terry stops to criminal matters. Police officers serve public safety roles, and have the duty to investigate circumstances where persons may need assistance or are in danger of harming themselves or others.

Here, it is undisputed that Officers Strnad and Tokarski received a dispatch report about a barefoot man that was all wet and talking to himself along 47th Street. A soaking wet barefoot man that is talking to himself alongside a busy street warrants some police action. Such a person could be under the influence of alcohol or drugs, or could need medical assistance of some type. The person could be a danger to himself or others, or the person may be all right and the situation innocuous. The critical point is that the dispatch report provided the officers with a reasonable basis to investigate further. Once at the scene, the officers saw Cady, who at least partially matched the description of the barefoot man.[2] The officers' encounter with Cady was unaggressive, consisting of general questions about his identity, what he was doing, and expressions of concern for his safety. Compare McNair v. Coffey, 279 F.3d 463, 464-66 (7th Cir. 2002) (criticizing an aggressive traffic stop). The officers did not handcuff or physically restrain Cady in any manner, display their weapons, or even touch Cady. For his part, Cady was uncooperative, as he refused to identify himself and voiced objections to the officers' presence. After twenty minutes, Cady left the area of

---

[2]For the sake of argument, the court will credit Cady's assertion that he was not wet and was not talking to himself. Cady's bare feet matched the description on the dispatch report and warranted the officers to see if Cady was the person described in the dispatch report, and if so, to continue with the investigation.

6

his volition and without objection from the officers. To a certain extent, the duration of the encounter was the result of the loquaciousness of Cady on irrelevant subjects. These facts demonstrate that the officers had a reasonable basis on which to approach Cady, and that the neither the length of the detention nor the officers' means of investigation were unreasonable. On these facts, there is no fourth amendment violation.

Cady's first amendment freedom of religion argument is similarly doomed. The brief twenty minute investigation of Cady in no way affected his right to practice his religious beliefs.

Having failed to demonstrate a violation of a constitutional right, Cady's § 1983 claims against Officers Strnad and Tokarski in their individual capacities fail. See Saucier, 121 S. Ct. at 2155; Ienco, 2002 WL 548891 at *3. Likewise without merit are Cady's claims against the officers in their official capacity and the claims against the municipality. See Ienco, 2002 WL 548891 at *3.

### C. State Law Claims:

Having determined that there is no federal issue, the court relinquishes pendant jurisdiction over any and all of Cady's state law claims. It is customary for the court to do so after resolving all federal claims. See 28 U.S.C. § 1367; see also Bank of California v. Arthur Anderson & Co., 709 F.2d 1174, 1175 (7th Cir. 1983) (describing as "virtually mandatory" the relinquishment of pendant jurisdiction after resolution of federal claims).

### III. CONCLUSION

For the foregoing reasons, the court grants Defendants' motion for summary judgment on Cady's federal claims and relinquishes jurisdiction over Cady's state claims.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 5/12/02